## ROSENBERG v. SCHOOLHERR.

(Supreme Court, Appellate Division, First Department.   December 7, 1906.)

1. Landlord and Tenant—Negligence—Elevators—Care Required.

Where a building containing a freight elevator was let to various tenants, and the elevator was under the control of the owner, the latter owed to those whose business required them to use the elevator and to those whom he permitted to use it the duty of maintaining the elevator in a reasonably safe condition for such use.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 668.]

2. Same—Evidence.

Defendant operated a freight and a passenger elevator in his building for the use of tenants; the freight elevator being usually used by tenants and their servants in removing packages of merchandise. This elevator was inclosed on two sides by perpendicular slats of wood, with a two-inch space between them. On the day of the accident the lower parts of two of the slats had been broken out, and plaintiff, an employé of a tenant, while rightfully using the elevator, inadvertently allowed his foot to protrude outside the car through the hole, so that the foot was crushed between the elevator car and the wall. Held, that defendant, having partially inclosed the elevator, was guilty of negligence in permitting the slats to become in a broken condition and was liable for the injury sustained.

McLaughlin and Houghton, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Philip Rosenberg, an infant, by his guardian ad litem, against Louis Schoolherr. From a judgment in favor of plaintiff and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before McLAUGHLIN, INGRAHAM, HOUGHTON, CLARKE, and SCOTT, JJ.

Chas. Melville Weeks, for appellant.

Chas. W. Sinnott, for respondent.

SCOTT, J.  The defendant is the owner of a building in this city having two entrances, one on Wooster street and one on Spring street. There are two elevators; the one on the Spring street side being distinctly a passenger elevator, and the one on the Wooster street side being a freight elevator for the use of the tenants in the building in sending out and receiving packages of merchandise.  Two sides of the elevator were composed of perpendicular slats of wood, running from the top to the bottom, each slat being almost three inches wide, and the space between them being about two inches.  On the day of the accident the lower parts of two of the slats had been broken out, leaving an unprotected opening measuring 13½ inches in width, by 38 inches in height, from the platform of the elevator.  The plaintiff, a lad about 17 years of age, was employed as a shipping clerk by his uncle, a tenant in the building.  On the day of the accident, having occasion to deliver a package to an expressman, he and two others of his uncle's employés, with the expressman, got into the elevator with a large package of goods.  They arrived safely at the ground floor, but were compelled to ascend again with the package because the expressman complained that it was insecurely boxed.  It was about half past 5 on a September

afternoon, and the elevator and shaft were pretty dark; there being no artificial light. The plaintiff did not see the hole in the slats, and did not know of its existence. After the package had been replaced on the elevator he entered and stood beside it. As soon as the car started he cried out, and when it was stopped, as it immediately was, it was found that his foot had been caught between the car and the wall and severely crushed, producing injuries of a serious nature. There can be no doubt that these injuries resulted from his having inadvertently allowed his foot to protrude outside the car through the hole above referred to, and it is certain that, if the hole had not been there and the slats had been whole and in good condition, the accident would not have happened.

Much stress is laid upon the fact that this elevator was distinctively and obviously a freight elevator, and that the building was also equipped with a passenger elevator. It also appeared that the fact of the existence of the passenger elevator was advertised by a notice upon the iron door of the freight elevator shaft. It appeared, however, beyond reasonable dispute that this freight elevator was not only necessarily used by employés of the tenants in receiving and delivering goods, but that it was also constantly used by such employés as a means of going up and down to and from their work, and this with the knowledge of and without serious objection, if any, from defendant's servant in charge of the elevator. Indeed, one witness testified that the employés were not permitted to use the passenger elevator.

It is perfectly well established that the owner of a building containing a freight elevator, where the building is let to various tenants, and the elevator is under the control of the owner, owes it to those whose business requires them to use the elevator, and to those whom he permits to use it, to see that the elevator is so maintained as to be reasonably safe for the uses to which it is put. Grifhahn v. Kreizer, 62 App. Div. 413, 70 N. Y. Supp. 973; Weinberger v. Kratzenstein, 71 App. Div. 155, 75 N. Y. Supp. 537. The evidence of notice to the owner's agent of the defect in the elevator is complete. It may be that the owner was under no obligation to inclose the elevator wholly or partly by slats, and that, if it had been uninclosed, the plaintiff would have had to watch out against permitting his foot to protrude. The owner had, however, seen fit to thus inclose the two sides, and therefore as to them he offered apparent security against such an accident as befell the plaintiff. His negligence consisted in permitting this apparent safeguard to become out of order, so that, instead of affording security, it constituted a trap. In our opinion the owner failed in this regard in his duty to keep the elevator reasonably safe for those who were rightfully using it.

Judgment and order affirmed, with costs.

INGRAHAM and CLARKE, JJ., concur.

McLAUGHLIN, J. (dissenting). The evidence is insufficient to sustain a finding that the plaintiff's injuries were due to defendant's negligence. It is also insufficient to sustain a finding that the missing slats were the proximate cause of injury. I therefore dissent.

HOUGHTON, J., concurs.